**EXHIBIT A-3**

**EXHIBIT A-3**

DATE FILED: May 2, 2019 7:18 PM
FILING ID: BE48C5DAE2EA5
CASE NUMBER: 2019CV30695

| | |
|---|---|
| DISTRICT COURT, ADAMS COUNTY, COLORADO<br>1100 Judicial Center Drive<br>Brighton, Colorado 80601 | |
| MOHAMED DIRSHE,<br><br>   Plaintiff,<br><br>v.<br><br>THE GEO GROUP, INC.,<br><br>   Defendant. | ▲ **COURT USE ONLY** ▲ |
| Counsel for Plaintiff Mohamed Dirshe:<br><br>Aaron Elinoff, #46468<br>NOVO LEGAL GROUP, LLC<br>4280 Morrison Road<br>Denver, Colorado 80219<br>Tel: (303) 335-0250<br>Email: aaron@novo-legal.com<br><br>Danielle C. Jefferis, *Of Counsel*, #47213<br>2255 East Evans Avenue, Suite 335<br>Denver, Colorado 80208<br>Tel: (303) 871-6155<br>E-mail: djefferis@law.du.edu | Case Number:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff Mohamed Dirshe, by and through his attorneys, Aaron Elinoff and Danielle C. Jefferis of NOVO LEGAL GROUP, LLC, hereby files his Complaint and Jury Demand against Defendant The GEO Group, Inc., a Florida corporation, and alleges as follows:

## **INTRODUCTION**

1. In 2017, Mohamed Dirshe was in the custody of the U.S. Immigration and Customs Enforcement ("ICE") and confined at the Aurora Detention Facility ("ADF"), a detention center operated and managed by Defendant The GEO Group, Inc. ("GEO"). Defendant

GEO is a for-profit company managing private prisons across the country pursuant to contracts with the federal government and local and state entities.

2. Soon after arriving at the ADF, Mr. Dirshe expressed to Defendant GEO employees that he felt that he was at risk in general population because he is gay and he feared for his personal safety on account of his sexual orientation. In response, Defendant GEO assigned him to the Restrictive Housing Unit ("RHU"), the Unit in the ADF where Defendant GEO housed detainees in the custody of both ICE and the U.S. Marshals Service ("USMS")—the former being people in civil custody and the latter being people pre-trial, criminal custody.

3. Soon after he was assigned to the RHU, two USMS detainees began taunting and threatening Mr. Dirshe, calling him offensive names and slurs related to his sexual orientation. Mr. Dirshe, again, feared for his personal safety and voice these concerns to Defendant GEO employees.

4. In spite of his concerns—and contrary to policy and common corrections practice—Defendant GEO failed to take reasonable steps to keep the USMS detainees separate from and protect Mr. Dirshe. At their first opportunity, though weeks into the persistent and apparent verbal abuse and threats directed toward Mr. Dirshe, the USMS detainees rushed Mr. Dirshe and brutally beat him for several long seconds before numerous Defendant GEO employees could pull them off of him.

5. Mr. Dirshe suffered serious physical, mental, and emotional injuries as a result of the assault and Defendant GEO's acts and omissions which led to the incident and constituted a failure of Defendant GEO to protect Mr. Dirshe from harm. To date, he continues to suffer harmful effects of these injuries.

## PARTIES

6. Plaintiff Mohamed Dirshe was born in Somalia. He emigrated to the United States in 1999 as a survivor of persecution, torture, and trauma. At all times relevant to the subject matter of this Complaint, he was a resident of and domiciled in the State of Colorado. He resides currently at 8671 East Cornell Drive, Denver, Colorado, 80231.

7. Defendant GEO is a corporation incorporated in the State of Florida with its corporate headquarters at 621 NW 53rd Street, Suite 700, Boca Raton, Florida, 33487. GEO's registered agent of service in Colorado is Corporate Creations Network, Inc., located at 155 East Boardwalk #490, Fort Collins, Colorado, 80525.

8. Under a contract with the federal government, GEO operates and manages the Aurora Detention Facility at 3130 North Oakland Street, Aurora, Colorado, 80010. Defendant GEO is, and has been at all times relevant to the subject matter of this Complaint, a corporation registered to do business under the laws of the State of Colorado.

9. In addition to direct liability for its own acts and omissions, Defendant GEO is vicariously liable for the acts, omissions, and wrongful conduct of its staff, agents, and employees committed within the scope of their employment.

## JURISDICTION AND VENUE

10. Jurisdiction of this Court is invoked pursuant to Colorado Revised Statute section 13-1-124(1)(a)-(b).

11. Venue is proper in the District Court for Adams County pursuant to Colorado Rule of Civil Procedure 98(c)(5).

## STATEMENT OF FACTS

12. In December 2016, Mr. Dirshe was transferred from the custody of the Colorado Department of Corrections to the custody of ICE to await the adjudication of proceedings regarding his immigration status. He was moved from a state prison to the Aurora Detention Facility ("ADF") in Aurora, Colorado.

13. At all times relevant to the subject matter of this Complaint, Defendant GEO contracted with the federal government to own and operate the ADF, a detention center housing people in the custody of the U.S. Marshals Service ("USMS") and U.S. Customs and Immigration Enforcement ("ICE").

14. For the first month of his confinement at the ADF, Mr. Dirshe was held in general population. He lived in a single cell with up to seven other people at one time.

15. Because Mr. Dirshe was in ICE custody, wherein people are held in civil confinement for indeterminate periods of time—some of which are relatively short while they await deportation—there were frequently people coming and going from Mr. Dirshe's cell. Defendant GEO assigned new cellmates to his cell often, and he rarely had an opportunity to get to know any of the other seven men in his cell with much familiarity.

16. The volume of people living with him in his cell, and their transience, concerned Mr. Dirshe, who is gay. People who identify as gay and are in prison or detention face heightened safety risks and are often targets for assault or abuse by other prisoners. Mr. Dirshe feared for his safety, being outnumbered in his cell and not knowing who would be housed in a locked room with him on any given day.

17. Mr. Dirshe voiced these safety concerns to Defendant GEO employees. He told the sergeant he did not feel safe in general population and asked to be assigned to a single cell. The sergeant refused Mr. Dirshe's request. He told Mr. Dirshe there were no single cells available outside of the Restricted Housing Unit (RHU), which is the segregation unit.

18.     After Defendant GEO refused to provide Mr. Dirshe a single cell for his safety, Mr. Dirshe had no choice but to request to be assigned to the RHU. He feared for his safety to such a degree that he chose to asked to be placed into solitary confinement for twenty-three hours per day rather than continue to be housed in a unit where he was afraid he would be abused or assaulted because of his sexual orientation.

19.     The RHU at the ADF houses detainees who are in disciplinary segregation and those who request protective custody due to safety concerns, like Mr. Dirshe. Defendant GEO assigns detainees in both USMS custody and ICE custody to the RHU. At the time, the RHU was the only location within the ADF where USMS and ICE detainees are confined in the same area.

20.     It is widely accepted and customary within the corrections industry that different custody classes of detainees should not be mixed. This is especially true of people who are detained pursuant to criminal authority, like USMS detainees, and people who are detained pursuant to civil authority, like ICE detainees.

21.     Defendant GEO was aware of the risks associated with mixing USMS and ICE detainees. At the time of Mr. Dirshe's assignment to the RHU, Defendant GEO's policy and practice in the RHU was to isolate the movement of USMS and ICE detainees so that the two custody classes were not mixed. For example, if staff had to move a USMS detainee in or out of the RHU, the ICE detainees in RHU had to be locked in their cells. The same was true for movement of ICE detainees: If an ICE detainee had to be moved in or out of the RHU, all of the USMS detainees in the RHU had to be locked down in their cells. Similarly, the two classes of detainees were not permitted to have "out-of-cell time" or be in the RHU's common area at the same time.

22.     In February or March 2017, soon after being moved to the RHU, Mr. Dirshe applied for a job. He was assigned to a porter job and was responsible for cleaning the bathrooms in the Unit.

23.     Mr. Dirshe's job required him to be out of his cell and moving around the Unit while he completed his cleaning duties. Consistent with Defendant GEO's policy and standard corrections practice, all other detainees in the RHU were locked down in their cells while Mr. Dirshe was working out of his cell.

24.     Within the first few days of starting his job, two USMS detainees began taunting Mr. Dirshe. They spoke to him from their cells while Mr. Dirshe was working in the Unit's common area. One of the detainees told Mr. Dirshe, "I remember you from state prison. I saw you hug another man. [The other man] is gay."

25.     Mr. Dirshe interpreted the USMS detainee's comments to imply the detainees knew Mr. Dirshe is gay and were threatening him because of his sexual orientation.

26. As the days went by, the USMS detainees' comments toward Mr. Dirshe because increasingly hostile and threatening. The USMS detainees directed numerous offensive remarks and slurs to Mr. Dirshe related to his sexual orientation. At one point, one of the detainees told Mr. Dirshe, "I'm going to beat the shit out of you."

27. During the times when Mr. Dirshe was locked down in this cell and the USMS detainees were not, these two detainees continued to direct slurs to Mr. Dirshe and tried to intimidate him through his cell door.

28. Mr. Dirshe continued to inform Defendant GEO employees of his fears for his safety, particularly with respect to the two USMS detainees who were taunting and threatening him.

29. On May 2, 2017, Mr. Dirshe had an appointment with his ICE officer. He left the RHU for the appointment in the morning.

30. Mr. Dirshe finished the appointment and was moving back to the RHU around Defendant GEO's shift change. When he came back to the Unit, the USMS detainees were in the common area for their out-of-cell time. Approximately three detainees were in the common area at the time, including the two USMS detainees who had been taunting and threatening Mr. Dirshe for weeks.

31. Two Defendant GEO employees saw Mr. Dirshe approach the Unit. Rather than follow Defendant GEO's policy requiring the USMS detainees to be locked down before an ICE detainee like Mr. Dirshe was moved through the Unit, the employees gestured casually to the USMS detainees and told them to go stand in the showers in the common area while Mr. Dirshe was moved back into his cell.

32. Per the employees' order, the USMS detainees stepped into the showers. The shower doors had to be locked with a key to be secure but none of the employees in the RHU bothered to lock the doors to secure the USMS detainees inside.

33. Once the USMS detainees stepped into the showers, the Defendant GEO employees escorting Mr. Dirshe back to his cell moved him into the Unit.

34. Mr. Dirshe made it only three or four steps into the Unit before the two USMS detainees in the showers who had been threatening him rushed him and began beating him to the ground. With their first blow to his head, Mr. Dirshe was thrown into the wall. He fell to the ground, as the USMS detainees continued brutally kicking and punching him.

35. The pounding continued for several seconds—what felt like hours. Mr. Dirshe could not move or otherwise avoid the beating, and he quickly lost consciousness.

36. It took numerous officers to pull each of the two USMS detainees off of Mr. Dirshe's crumpled body.

37. After the assault, Defendant GEO employees threw Mr. Dirshe into isolation for thirty-six hours. He was in significant pain and exhibited swelling and bruises but he received no medical attention, let alone medical care, for his injuries that night and into the next day.

38. The only medical attention Defendant GEO provided to Mr. Dirshe in the days after the assault was Ibuprofen and Tylenol. He received no emergency care.

39. That same night of the assault, however, Defendant GEO moved all of the USMS detainees in the RHU to their own unit.

40. The next day, an officer from the Aurora Police Department visited the ADF to investigate Mr. Dirshe's attack. According to the Aurora Police Department's report, ICE informed the APD that the agency wished to pursue charges against the two USMS detainees who attacked Mr. Dirshe. Yet, no one asked Mr. Dirshe in the days following the attack whether he wanted to press charges.

41. Finally, approximately two weeks later, the Aurora Police Department noted Mr. Dirshe also wished to pursue charges. The police report indicates the investigating officer prepared summonses charging the USMS detainees with Assault and Battery.

42. Mr. Dirshe continued to requested medical attention from Defendant GEO to address the injuries he sustained during the assault, including the blows to his head. He sent kites (or letters) to Defendant GEO's medical department requesting an appointment. On May 26, 2017, he received a response stating he was scheduled for a neurology appointment but the response specified no date, place, or time for the appointment.

43. Finally, Defendant GEO transported Mr. Dirshe to an initial assessment at Denver Health Hospital on May 31, 2017. At the consultation, Mr. Dirshe reported a headache and blurred vision, and the Denver Health medical professionals noted he had recently suffered multiple blows to his right frontal area and orbit and was suffering neck pain, headaches, vertigo, double and blurred vision, dizziness, tinnitus, hearing loss, imbalance, insomnia, left arm sensory loss, and right shoulder pain.

44. At Denver Health, Mr. Dirshe underwent an MRI. A neurologist diagnosed Mr. Dirshe with photophobia (light sensitivity) in his right eye, as well as blurriness, visual disturbance, and pain in the right orbit of his eye. His records also note he was positive for dizziness, tremors, weakness, numbness, headaches, and sleep disturbance.

45. After returning to the ADF, Mr. Dirshe requested Defendant GEO dim the lights in his cell to alleviate the pain caused by the light sensitivity. Defendant GEO refused to permit Mr. Dirshe to do so.

46. In fact, in September 2017, Defendant GEO employees placed Mr. Dirshe on disciplinary sanctions for partially covering his lights. Even on disciplinary sanctions, Defendant GEO continued to threaten Mr. Dirshe with further discipline for covering his lights.

47. A native of Somalia, Mr. Dirshe witnessed and experienced significant trauma, violence, and persecution before he immigrated to the United States. He was targeted and beaten by groups because of his and his family's identity. The attack in the ADF was remarkably similar to an attack he suffered as a child, and he endured painful flashbacks during and after the assault as a result of the familiar trauma.

48. Mr. Dirshe suffered serious physical, mental, and emotional injuries as a result of the assault and Defendant GEO's acts and omissions that led to the incident and constituted a failure of Defendant GEO to protect Mr. Dirshe from harm. He has experienced lasting head and neck pain and stiffness, ringing in his ears, blurry vision, and pain in his right eye, as well as sustained light sensitivity. To date, he continues to suffer effects of these injuries.

49. Upon information and belief, Defendant GEO fired several of its employees in response to Mr. Dirshe's assault.

## CLAIM FOR RELIEF
### Negligence

50. Mr. Dirshe hereby incorporates by reference all paragraphs of this Complaint as if set forth fully herein.

51. At all times relevant to the subject matter of this Complaint, Mr. Dirshe was a detainee confined to and in Defendant GEO's care. Defendant GEO owed Mr. Dirshe a duty to protect him from harm and reasonable risk of harm.

52. Because Mr. Dirshe was dependent on and under the control of Defendant GEO and its staff, employees, and agents, Mr. Dirshe had a special relationship with Defendant GEO, such that Defendant GEO had a duty to exercise reasonable care in protecting Mr. Dirshe's health and safety.

53. Defendant GEO was on notice of the risk of harm posed to Mr. Dirshe because of his sexual orientation and his status as an ICE detainee because, *inter alia*, Mr. Dirshe informed Defendant GEO employees on multiple occasions of the slurs and threats the USMS detainees directed toward him. Additionally, it is common corrections practice to segregate and avoid the mixing of differing custody classes of prisoners, such as ICE and USMS detainees.

54. Defendant GEO grossly breached its duty to protect Mr. Dirshe from harm by, *inter alia*, failing to take reasonable steps necessary to prevent the danger created when GEO staff moved Mr. Dirshe into the living unit with the USMS detainees who assaulted him.

55. Mr. Dirshe suffered—and continues to suffer—serious injuries as a result of Defendant GEO's breach of its duty of care owed to Mr. Dirshe.

56. Defendant GEO's breach of its duty of care owed to Mr. Dirshe is the proximate cause of the injuries he suffered and continues to suffer.

57. Defendant GEO is vicariously liable for the acts and omissions of its staff, employees, and agents conducted within the scope of their employment.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Dirshe requests respectfully that this Court enter judgment in his favor and against Defendant GEO, in an amount to be determined by a jury following a trial, and award him all relief allowed by law, including but not limited to the following:

a. Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, emotional distress, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

b. Punitive damages;

c. Pre-judgment and post-judgment interest at the highest lawful rate;

d. Case costs;

e. Such further relief as justice requires or the law allows.

Respectfully submitted this 2nd day of May, 2019.

[Filed electronically; original signatures on file in the undersigned counsel's office.]

NOVO LEGAL GROUP, LLC

*s/ Aaron Elinoff*
Aaron Elinoff, #46468
4280 Morrison Road
Denver, Colorado 80219
Tel: (303) 335-0250
Email: aaron@novo-legal.com

*s/ Danielle C. Jefferis*
Danielle C. Jefferis, *Of Counsel*, #47213
2255 East Evans Avenue, Suite 335

Denver, Colorado 80208
Tel: (303) 871-6155
Email: djefferis@law.du.edu

*Attorneys for Plaintiff*

9